**W. S. JACKSON, Appellant,**

v.

**LOUISVILLE ASPHALT COMPANY, Inc.,**
**Appellee.**

Court of Appeals of Kentucky.

Dec. 5, 1957.

Taylor & Ray, Athol Lee Taylor, Louisville, for appellant.

Boehl, Stopher, Kilgarriff, Graves & Deindoerfer, Joseph E. Stopher, A. J. Deindoerfer, Louisville, for appellee.

CAMMACK, Judge.

The appellant, W. S. Jackson, instituted this action against the appellee, Louisville Asphalt Company, Inc., in February, 1955, to recover damages for personal injuries alleged to have resulted from a collision between his car and one of the appellee's trucks. The collision occurred in August, 1954, and allegedly, was due to the negligence of the appellee's truck driver in driving his truck into the rear of the appellant's car. This appeal is from a judgment on a jury verdict in favor of the appellee.

The appellant contends that the judgment should be reversed because the trial court committed the following errors: (1) Failed to give the appellant an opportunity to object to the instructions given by the court out of the hearing of the jury; (2) failed to explain an instruction when requested to do so by the jury; (3) permitted incompetent material to be taken into the jury room during deliberations; and (4) gave an erroneous instruction. Some details concerning the collision and the trial procedure are necessary for a proper understanding of the appellant's contentions.

The collision occurred on Shelbyville Road, a four lane divided highway, near a bus stop just east of its intersection with Hurstbourne Lane in Jefferson County. The weather was clear, the road was dry, and the time was approximately 9:00 a. m. Jackson, who was part owner of a pharmacy at Middletown, was driving east toward Middletown when he noticed an employee of the pharmacy waiting for a bus to take her to work. He decided to give her a ride and immediately slowed down. He stopped a short distance past where she was standing. The appellee's truck was being driven by its employee, Garnett Holly, behind the Jackson car, and struck it from the rear while it was stopped on the highway.

There are conflicts in the evidence relative to giving of signals, presence of other vehicles at the scene and the distances involved. According to Holly, Jackson had just passed him at a speed of about 50 miles per hour when he cut back in front of the truck and, after traveling about 20 feet, applied his brakes. Holly stated that he saw the stop lights when he was 50 to 65 feet behind Jackson's car, but that he

did not see Jackson give any hand signal. He said that Jackson stopped with his car entirely on the highway and that another car was passing his truck so that he was unable to pull to the left to get around Jackson's car until it was too late to avoid the collision. Holly testified that the truck was fully loaded, that he was traveling about 35 miles per hour, and that he could have stopped the truck within a distance of 30 to 40 feet. (It was later stipulated by the parties that the braking distance of a vehicle traveling 30 miles per hour is 82.5 feet, while the braking distance of a vehicle traveling 35 miles per hour is 105.9 feet. Both of these distances included an allowance for driver reaction time). Holly described the position of the vehicles immediately prior to and at the time of the collision by either marking, or referring to marks made by counsel, on a map of the locale.

Jackson testified that he had been driving east for several miles in the curb lane at a speed of 30 to 35 miles per hour when he noticed the employee at the bus stop. Immediately he signaled his intention to stop by giving a hand signal and applied his brakes. His statements indicate that he traveled some 65 to 80 feet after applying his brakes before the car came to a complete stop. He said that he stopped with the front and rear wheels on the right-hand side of the car off the paved portion of the highway. He said also that he saw the truck in his rearview mirror and that it was some 30 to 40 feet behind him when he first signaled. According to Jackson, the truck driver made no apparent effort to stop and upon realizing that the truck was going to hit him he drew in his signal arm to avoid injury. He estimated that 9 or 10 seconds elapsed between the stopping of his car and the impact. Neither Jackson nor the lady he intended to pick up saw the third vehicle described by Holly, according to their testimony.

Instructions were dictated by the trial judge in the presence of counsel for both parties and without objection on their part at 9:00 p. m. on the day of completion of the appellant's evidence. At that time counsel for the appellee was not certain as to whether he would introduce more evidence. The instructions were typed up over night and copies were available for the judge and both counsel, having been placed on their respective tables, immediately before court convened on the following morning. When court convened at nine o'clock the defense introduced several stipulations which had been agreed to by the parties and then rested. The trial judge then, without objection, proceeded to read the instructions to the jury.

According to affidavits filed in support of and in opposition to the appellant's motion for a new trial, the jury, after it had retired to the jury room, requested the map which had been used during presentation of the evidence, together with a yardstick and ruler. The trial judge, without objection, allowed the jury to have these items during its deliberation. It is asserted also in affidavits of counsel that the jury asked for clarification of Instruction No. 2(c) which read as follows:

"2. It was the duty of the plaintiff Jackson, driving the Chevrolet automobile east on U. S. Highway 60 at the time and place and on the occasion about which you have heard evidence:

"c. Not to stop or leave his Chevrolet automobile standing upon the main travelled portion of U. S. Highway 60."

It is asserted also that the trial judge refused the request because, as he said in his opinion, the instruction followed a statute and was stated in understandable words. The appellant's counsel did not object to this refusal.

None of the alleged errors toward which complaint is now directed were preserved properly during the course of the trial. No objections were made when the alleged errors were committed; thus the trial judge

was afforded no opportunity to rule on them. Clay, CR, p. 526. Nevertheless, the trial judge reviewed the questions raised in the motion and grounds for a new trial in an exhaustive opinion before overruling them. Had the alleged errors been preserved properly on the trial, we would be disposed to follow the reasons given by the trial judge and to reiterate at some length the position taken in overruling the motion and grounds for a new trial. We agree with him that the evidence would have supported a finding for the appellant. We have found no palpable error affecting the substantial rights of the appellant. CR 61.02.

Judgment affirmed.